UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SHUZHONG BAO and BIBO ZENG,

                     Plaintiffs,                   **OPINION AND ORDER**

        -against-                     19-cv-8062 (AEK)

XUGUANG WANG, *also known as* JASON
WANG, YIFEN BAO, ZOE WANG, SUNWOO
TRADE INC., and 506 PIERMONT AVENUE
HOLDING CORP.,

                     Defendants.
------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

      Plaintiffs Shuzhong Bao and Bibo Zeng brought this action against Defendants Xuguang

Wang (also known as Jason Wang), Yifen Bao, Zoe Wang, Sunwoo Trade Inc., and 506

Piermont Avenue Holding Corp. (collectively, "Defendants"), asserting state law claims of

breach of contract, unjust enrichment, and fraud. ECF No. 1 ("Complaint" or "Compl."").

Defendants filed an Answer in which they asserted five counterclaims including, among others,

fraudulent inducement and breach of fiduciary duty. ECF No. 19. The Court conducted a three-

day bench trial from March 14, 2022 to March 16, 2022. Plaintiffs Shuzhong Bao and Bibo

Zeng testified on their own behalf, and Defendants Xuguang Wang and Yifen Bao testified on

behalf of all Defendants. Following the trial, the Court issued an order providing a list of ten

topics for the parties to address in post-trial briefs. ECF No. 87. The parties filed their post-trial

briefs on July 15, 2022. ECF Nos. 90, 91.

---

[1] The parties have consented to the Court's jurisdiction pursuant to 28 U.S.C. § 636(c).
ECF No. 49.

For the reasons that follow, the Court finds that Plaintiffs have failed to prove, by a preponderance of the evidence, that Defendants are liable on any of Plaintiffs' claims. The Court further finds that because Defendants have failed to present any evidence regarding their counterclaims, they have failed to prove, by a preponderance of the evidence, that Plaintiffs are liable on any of Defendants' counterclaims.

## FINDINGS OF FACT

The Court makes the following findings of fact as required by Rule 52 of the Federal Rules of Civil Procedure.

### I.    The Parties

Plaintiff Shuzhong Bao ("Mr. Bao") and Defendant Xuguang Wang ("Mr. Wang") are brothers-in-law. Trial Transcript ("Tr.") at 7:19-21, 264:12-13. Mr. Bao and Defendant Yifen Bao, Mr. Wang's wife ("Ms. Bao"), are brother and sister. *Id.* at 7:1. Plaintiff Bibo Zeng ("Ms. Zeng") is Mr. Bao's wife. *Id.* at 3:15-16. Defendant Zoe Wang ("Ms. Wang") is Mr. Wang and Ms. Bao's daughter and Plaintiffs' niece. *Id.* at 7:4.

Plaintiffs are citizens of China, living in New York State. *Id.* at 3:10-11, 4:7-9. Ms. Zeng has a still-pending application for political asylum in the United States based on "persecution in China" and/or "based on [the] family planning policy of [the] Chinese [g]overnment," *id.* at 59:7-20, 245:17-21, and Mr. Bao testified that he is included within this application as a member of Ms. Bao's family, *id.* at 59:7-20; *see also id.* at 330:5-17 (Mr. Wang testified that he believed that Mr. Bao had "refugee protection" immigration status, meaning that the U.S. provided him a visa that protected him from being returned to China).[2] Defendants Mr.

---

[2] Neither Mr. Bao nor Ms. Zeng expressly testified that they are citizens of China, but the Complaint alleges that they both are Chinese citizens, Compl. ¶ 10, there was testimony from both parties about Mr. Bao's and Ms. Zeng's ongoing familial ties to China, and there is no

Wang, Ms. Bao, and Ms. Wang are citizens of the United States, living in New Jersey.  *Id.* at

263:14-21, 264:23-24 (Mr. Wang's citizenship status), 276:10-12 (Ms. Bao's citizenship status).[3]

Defendant Sunwoo Trade Inc. ("Sunwoo Trade") owns two restaurants located at 506 Piermont

Avenue, Piermont, New York.  Pls.' Ex. P.[4]  Defendant 506 Piermont Avenue Holding Corp.

("506 Piermont") owns the land located at 506 Piermont Avenue.  *Id.*  According to the loan

agreement signed in connection with the acquisition of the 506 Piermont property, Sunwoo

Trade and 506 Piermont are New York corporations.  *See* Pls.' Ex. P.  In addition, Defendants

allege as part of their counterclaims—and therefore admit—that both Sunwoo Trade and 506

Piermont are New York corporations that were incorporated "in or around May 2016."  ECF No.

19 at 16-17, ¶¶ 3, 5.

## II.    The 2016 Agreement and Transfer of Funds

In 2016, Mr. Bao and Mr. Wang—with the knowledge of Ms. Bao—discussed the

possibility of Mr. Bao investing in business opportunities with Mr. Wang and Ms. Bao.  Tr. at

---

evidence that Plaintiffs are citizens of any country other than China.  In particular, the record is clear that Plaintiffs are not citizens of the United States, as they are seeking alternate forms of legal status in this country based on their experiences in China.  Accordingly, there is sufficient circumstantial evidence for the Court to conclude that Plaintiffs are citizens of China.

[3] No specific evidence was presented regarding the citizenship of Ms. Wang.  The Complaint alleges that she is a United States citizen, Compl. ¶ 13, and curiously, Defendants refused to either admit or deny this straightforward allegation, *see* ECF No. 19 at 3, ¶ 13.  If Ms. Wang were a citizen of a foreign country and not a citizen of the United States, this Court would not have subject matter jurisdiction over Plaintiffs' claims or Defendants' counterclaims, and the case would have been dismissed.  *See CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 158 (2d Cir. 2009) (*per curiam*).  In other words, it would have been in Defendants' interest to make clear—at the earliest possible stage—if Ms. Wang were not a United States citizen.  The fact that Defendants never made this point despite the opportunity to do so (i) in their Answer; (ii) in the Joint Pretrial Order; (iii) at the final pretrial conference or at trial when the Court raised the issue of subject matter jurisdiction; (iv) in the post-trial briefing; or (v) at any other point in the litigation, leads the Court to infer that Ms. Wang is, in fact, a United States citizen.

[4] "Pls.' Ex. __" refers to exhibits received in evidence at trial.

14:10-15:7, 108:20-21, 287:21-289:2.  In a text exchange on WeChat, a Chinese communications platform, on September 14, 2016, Mr. Bao and Mr. Wang discussed the amount of money that would be needed to purchase certain real property, which included two restaurants and three residential units.  Pls.' Ex. A.  The property in question was the "Piermont project"—*i.e.*, the land located at 506 Piermont Avenue, Piermont, New York, and the structure at that address, which contained two restaurants (Freelance Café and Xavier's) and multiple apartments.[5]  Mr. Wang noted in the WeChat text exchange that the various costs would be "split" between him and Mr. Bao, and stated "[r]egarding the property, you own half of it. . . . Half of the property and the restaurant business also belong to you." *Id.*  According to this September 2016 exchange, each party was to contribute a total of $775,000.  *Id.* ("It should be—the transaction price [of] 1200 thousand divided by two plus the refurbishment cost [of] 350 thousand divided by two.").

At the same time, however, Mr. Bao also stated during his testimony that the 2016 agreement called for an investment of $600,000.  Tr. at 22:20-23:4, 51:3-7 ("[t]hey ask me to step up my investment"), 54:22-23 (Mr. Bao claimed that after making the $600,000 transfer, they "let [him] step up the money [he] invest[ed]"); *see also* ECF No. 91 ("Pls.' Post-Trial Mem.") at 15, 24, 25 (Plaintiffs insist that additional funds contributed beyond the $600,000 should not be considered as part of the original 2016 contractual arrangement between the parties).  Similarly, though it was never signed, a proposed shareholder agreement that Mr. Bao sent to Mr. Wang on July 27, 2019, Pls.' Ex. N, included a chart noting that Plaintiffs made a cash transfer of $600,000 for 50 percent of the shares of Sunwoo Trade.  *See id.*  Meanwhile, Mr.

---

[5] By this time, Mr. Wang had been involved in the restaurant industry in the United States as the operator of various restaurants for more than 30 years.  Tr. at 14:8-9, 265:2-22.

Wang consistently and repeatedly testified that the parties agreed that Mr. Bao's investment in the Piermont project would be $600,000.  Tr. at 294:10-295:1, 301:15-22, 351:3-5, 352:19-23, 444:14-16.  Further, a "receipt" provided by Mr. Wang to Mr. Bao, dated January 24, 2019—the terms of which were not accepted by Mr. Bao—referred to the amount of the "investment fund" as $600,000.  Pls.' Ex. M; *see* Tr. 410:5-12.

Plaintiffs sent $600,000 from China to Defendants in connection with their investment in the Piermont project.  *Id.* at 22:18-23:4.  Plaintiffs transmitted the money via 12 separate wire transfers of $50,000 each: Plaintiffs themselves each wired $50,000; Ms. Zeng's parents (Mr. Bao's in-laws) each wired $50,000; two friends of the parents/in-laws each wired $50,000; and six of Plaintiffs' friends each wired $50,000 after receiving the money for the wire transfers from Plaintiffs.  *Id.* at 30:24-32:17.[6]  The individual defendants—Mr. Wang, Ms. Bao, and Ms. Wang—received the wired funds in eight different individual, personal bank accounts.  *Id.* at 39:23-40:6, 483:20-484:19, 488:4-489:5.  According to Mr. Bao, $400,000 was wired in June 2016; $100,000 was wired in October 2016; and $100,000 was wired in November 2016.  *Id.* at 48:12-16.

The parties dispute whether the $600,000 received by Defendants for the Piermont project constituted contributions directly from Plaintiffs or from Shanghai Speed Entertainment Corporation (referred to throughout the trial and the parties' submissions as "Shanghai Speed"), a Chinese company that originally was owned by Mr. Bao's and Ms. Wang's mother, and Ms. Zeng's father. *See id.* at 295:16-23 (according to Mr. Wang, all of the $600,000 came from

---

[6] According to Mr. Wang, an individual in China is not permitted to transfer more than $50,000 to the United States.  Tr. at 297:11-17; *see also id.* at 13:1-6 (Mr. Bao testified, in connection with a different business transaction, that one person could not transfer $150,000 from China to the United States, and that he needed to "find three individuals" to transfer those funds).

Shanghai Speed); 139:10-14, 281:14-282:10, 372: 6-8 (addressing the ownership of Shanghai

Speed); 371:21-22 (Mr. Wang's testimony as to the full name of the company).[7]   Neither

Plaintiffs nor Defendants produced admissible bank records to support their testimony regarding

the source of the money or how it was transferred from China to the United States.  *Id.* at 420:22-

421:6.  The confusion surrounding the source of the funds, however, is ultimately immaterial, as

Mr. Wang conceded at trial that Mr. Bao—and not Shanghai Speed—is, to this day, the 50

percent owner of Sunwoo Trade and 506 Piermont.  *See* Tr. at 310:11-16, 351:11-19, 352:10-11,

353:20-354:2, 354:24-355:3, 368:16-18; Pls.' Ex. M (proposed "receipt" provided by Mr. Wang

to Mr. Bao addressed "Mr. Bao's investment fund [of] $600,000" without any reference to

Shanghai Speed); ECF No. 90 ("Defs.' Post-Trial Mem.") at 23 ("Bao personally is the true 50%

owner with Wang the other 50% owner"), 25 ("Wang agrees that Bao was and still is the 50%

owner in Sunwoo Trade, Inc. and in 506 Piermont, LLC").

   According to Mr. Bao, the terms of the parties' agreement were that: (1) Mr. Bao "would

be investing money in the Piermont project"; (2) "the purpose of that investment was to purchase

the property, 506 Piermont [Avenue], and the restaurants on the ground floor of that building"

together with Mr. Wang; (3) Mr. Bao would invest $775,000, and Mr. Wang would apply for a

loan to "cover his half of the project"; (4) in exchange for Mr. Bao's investment, Mr. Bao

---

[7] The parties gave conflicting testimony about whether specific ownership interests in Shanghai Speed were formally transferred to Mr. Bao and Mr. Wang by their father-in-law and mother-in-law, respectively.  Mr. Bao testified that he received a gift from his father-in-law amounting to 19 percent of the shares of Shanghai Speed, but that he never took formal legal ownership of those shares.  Tr. at 143:2-23.  Mr. Wang testified that he received a 51-percent ownership interest in Shanghai Speed from his mother-in-law, and that Mr. Bao received an ownership interest of 20 percent from his father-in-law.  *Id.* at 283:6-285:10, 372:6-8; *but see id.* at 142:20-143:1.  Even though considerable time was spent developing this testimony at trial, the Court need not reach a determination as to the precise ownership status of the parties in Shanghai Speed in order to resolve the issues presented here.

"would receive 50 percent ownership of the property and the restaurants"; and (5) Mr. Bao's 50 percent ownership interest would be reflected in formal documentation to be provided to Plaintiffs.  Tr. at 235:16-236:10; *see also id.* at 151:6-152:1, 154:13-22.  Ms. Zeng also believed that a material term of the agreement was that there would be written "proof" of an ownership interest in the Piermont project.  *Id.* at 242:14-19.  From Mr. Bao's perspective, there were no other terms of the 2016 agreement between Mr. Bao and Mr. Wang.  *Id.* at 236:11-14.

Defendants do not dispute the first, second, or fourth terms of the contract as set forth by Mr. Bao; as to the third term, Defendants assert that the amount of the investment was $600,000 rather than $775,000, and as to the fifth term, Defendants maintain that there was no agreement to provide written documentation of Mr. Bao's ownership interest.  Mr. Wang testified that he could not provide documentation regarding Mr. Bao's ownership interest in the Piermont project because non-U.S. citizens are not permitted to hold an interest in a liquor license, nor are non-citizens permitted to apply for loans from the United States Small Business Administration ("SBA"), both of which would be required for the successful operation and financing of the Piermont project.  *Id.* at 328:21-23, 329:20-330:4, 367:4-368:10; *see also id.* at 49:9-19 (Mr. Bao testified that Mr. Wang told him that the liquor license and SBA loan were among the reasons why he could not provide documentation of Mr. Bao's ownership status).

There is no dispute that Plaintiffs never received any documentation confirming any ownership interest in the Piermont project.  *See id.* at 442:21-22.  There is also no dispute that

the terms of the 2016 agreement between the parties were never memorialized in any form of written agreement.[8]  Tr. at 115:16-19, 157:25-158:2.[9]

### III.    The Piermont Project Acquisition

On October 20, 2016, 506 Piermont and Sunwoo Trade purchased the three-floor building located at 506 Piermont Avenue, which had two restaurants on the ground floor and residential units on the second and third floors.  Pls.' Ex. P (506 Piermont and Sunwoo Trade are listed as co-borrowers on the SBA loan documentation).  Sunwoo Trade purchased the two ground-floor restaurants, Freelance Café and Xavier's, on October 20, 2016 as well.  *Id.* (Sunwoo Trade is listed as the "Transferee" on the Bill of Sale for the restaurants).

Mr. Bao testified that he believed that the $600,000 investment from Mr. Bao and Ms. Zeng that was supposed to be invested in the Piermont project was not actually used by Defendants for that intended purpose, both because the money was never transferred from

---

[8] There is also no dispute that the parties had jointly participated in other real estate-related business ventures without written contracts governing the terms of the business relationship.  Tr. at 11:17-12:23.

[9] There was considerable testimony offered at trial regarding a recorded telephone call between the parties that took place shortly after this lawsuit was filed in 2019; an English translation of a transcript of this phone conversation was received in evidence.  Pls.' Ex. T.  Mr. Bao testified that he felt that he was being threatened by Mr. Wang during the call in an effort to get Mr. Bao to dismiss this case.  Tr. at 93:20-24, 214:7-215:15.  Mr. Wang stated on the phone, among other things, that the way in which Mr. Bao remitted the money to Mr. Wang from China was in violation of both Chinese and U.S. laws.  *See* Pls.' Ex. T.  In response to questioning from the Court, Mr. Wang admitted that he was "very angry" at the time of this call, and that he said things about Mr. Bao's investment that he did not even believe himself.  Tr. at 452:7-14 ("that's just angry talk on the phone").  With Plaintiffs' Exhibit T in front of him, Mr. Wang confirmed that regardless of what he said during the September 2019 call, it continued to be his understanding, based on the agreement that was entered into in 2016, that Mr. Bao (or Shanghai Speed) was a 50 percent owner of 506 Piermont and Sunwoo Trade.  *Id.* at 449:16-450:5.  While this phone call does not reflect well on Mr. Wang, who clearly was acting in a hostile and bullying manner during the conversation, Mr. Wang's over-the-top bluster during the call has no impact on the legal relationship between the parties, and therefore has no bearing on the outcome of this matter.

Defendants' individual, personal bank accounts into any relevant corporate accounts, Tr. at 187:19-21, and because of the size of the loan Mr. Wang took to finance the project, *id.* at 46:10-12. In addition, Mr. Bao testified that he was told by his sister, Ms. Bao, that the investment money was instead used to purchase Defendants' house in New Jersey. *See id.* 66:21-67:1; 187:10-21. Both Mr. Wang and Ms. Bao disputed the assertion about the purchase of the New Jersey house, *id.* at 274:11-275:3, 485:6-12, and Mr. Wang testified regarding how he applied the $600,000 investment to the Piermont project, *id.* at 310:18-314:14, 416:11-418:20, 467:5-468:20.

Mr. Bao, Ms. Zeng, and their family came to the United States between February and April of 2017; for some period of time they lived in one of the apartments at 506 Piermont Avenue, and both Mr. Bao and Ms. Zeng worked for some time in the restaurants that were part of the Piermont project. *Id.* at 4:3-6, 476:13-16 (timing of immigration to the United States), 64:13-22, 164:8-12, 166:2-24, 244:12-20, 314:16-25 (worked at restaurants), 162:19-23 (lived in apartment). No later than early 2019—well prior to the onset of the COVID-19 pandemic—the restaurants experienced a significant decline in profitability. *See id.* at 78:17-19, 217:11-14, 315:14-23, 357:6-10, 432:4-8.

## IV.   Additional Transfers of Funds

Mr. Bao testified that he transferred additional money beyond his initial investment into Sunwoo Trade's bank account at various times between March 2017 and January 2018, bringing his total investment up to $867,000; he acknowledged, however, that there were no other contract terms associated with that additional investment. *Id.* at 236:16-24; *see also id.* at 57:9-13; Pls.' Ex. K. According to Mr. Bao, he provided these additional funds because he was asked by Mr. Wang to "step up [his] investment." Tr. at 51:3-7, 56:24-57:8. Yet Plaintiffs state

repeatedly in their post-trial submissions that the additional transfers of $267,000 should not be considered part of the original 2016 agreement between the parties.  Pls.' Post-Trial Mem. at 15, 24, 25.

Mr. Wang denies that any additional investments were made by Mr. Bao based on any request from him.  Tr. at 343:1-3, 344:25-345:3.  Indeed, Mr. Wang testified that he did not even know that Mr. Bao was putting this additional money into the business.  *Id.* at 343:4-5.  There is no documentary evidence of an agreement to provide this additional money.  *Id.* at 193:17-19.

* * * * * * * * * * *

## V.      Credibility Findings Regarding Disputed Issues

### A.      Amount of Mr. Bao's Investment

Based on the totality of the evidence submitted, and after weighing the credibility of the parties' testimony, the Court concludes that the 2016 oral agreement obligated Mr. Bao to remit $600,000—and not $775,000—to Defendants in exchange for a 50-percent ownership interest in the Piermont project.  Despite the language of the WeChat message, Pls.' Ex. A, and Mr. Bao's testimony about a $775,000 initial investment, the weight of the evidence—including Mr. Wang's testimony, the documents received in evidence, and even various portions of Mr. Bao's testimony—indicates that the initial investment amount was $600,000.  Notably, the Complaint alleges that "[a]n agreement was made between the parties to raise RMB equivalent to *$600,000.00 (USD) in China*," Compl. ¶ 16 (emphasis added), and consistent with that allegation, Mr. Bao testified to 12 separate remittances to Defendants of $50,000 each, in June, October, and November of 2016, around the time leading up to and immediately following the closing on the Piermont project transaction.  The January 24, 2019 receipt that Mr. Wang sent to Mr. Bao, *see* Pls.' Ex. M, also acknowledged Mr. Bao's "investment fund" of $600,000.

Similarly, though it was never signed by Mr. Wang, a proposed shareholder agreement prepared *by Mr. Bao* on July 27, 2019 included a chart noting that Plaintiffs made a cash transfer of $600,000—not $775,000—for 50 percent of the shares of the Piermont project.  *See* Pls.' Ex. N; Tr. 223:11-22.

### B.      Material Terms of the 2016 Agreement

Based on all of the evidence received, the Court finds that the parties mutually agreed in 2016 that: (1) Mr. Bao would invest money as part of the Piermont project, and that the investment funds would be used for the purchase of the land at 506 Piermont Avenue, the restaurants on the ground floor and the units on the upper floors of the building at that location, and the operation of the restaurants; (2) Mr. Bao would invest $600,000, and Mr. Wang would apply for a loan to complete the financing of the project; and (3) in exchange for Mr. Bao's investment, Mr. Bao would receive 50-percent ownership of the property and the restaurants, *i.e.*, a 50-percent ownership interest in 506 Piermont and Sunwoo Trade.

The Court does not credit Plaintiffs' testimony that the receipt of shareholder certificates evidencing Mr. Bao's 50-percent ownership of Sunwoo Trade and 506 Piermont was a material term of the parties' 2016 oral agreement.  *See* Tr. at 170:15-19, 236:8-10, 242:14-19.  Viewed as a whole, the evidence does not support a finding that written proof of Mr. Bao's shareholder status was a term of the agreement.

First, the evidence reflects that Plaintiffs did not seek any formal documentation of shareholder status until years after they transferred funds to Defendants in 2016, at which point they sought to re-characterize their 2016 investment as a loan.[10]  *See* Pls.' Ex. L; Tr. at 67:16-

---

[10] Mr. Bao testified unambiguously that the money contributed toward the Piermont project in 2016 was an investment, not a loan.  Tr. 111:1-5, 235:16-19.

70:15 (Mr. Bao described Ex. L as proposed borrowing agreements drafted in 2018—one for the $600,000 remitted by Plaintiffs in 2016, and the other for the $267,000 remitted by Plaintiffs in 2017), 193:13-16 ("Q: This was your effort, was it not, to change your original agreement from an investment to a loan? Isn't that correct? A: Correct."). If written confirmation of Mr. Bao's shareholder status was a critical component of the 2016 agreement, it is unclear why Plaintiffs did not take action regarding this purported provision sooner, even taking into account Mr. Bao's stated desire to "keep our good relationship between the family members" and not ask too many questions about the investment. *See* Tr. at 56:24-57:8.

Second, Mr. Wang has provided clear explanations for why he would not have agreed to a contractual term that would have required him to provide written documentation of Mr. Bao's ownership interest. Specifically, Mr. Wang explained that that non-U.S. citizens lacking legal permanent resident status, like Mr. Bao, were ineligible to apply for either a New York liquor license or an SBA loan, both of which were necessary to purchase the property and operate the restaurants at 506 Piermont Avenue. *See id.* at 328:21-23, 329:20-330:4, 367:4-368:10. Even though it amounted to an acknowledgement that he deliberately mislead both the SBA and the state licensing authorities, Mr. Wang's testimony on these points was credible and provided an explanation for why Mr. Wang, who had decades of experience in the restaurant industry in the United States, would not have entered into an agreement that would have required providing documents that could have fundamentally crippled the new restaurant acquisitions.

## C.    Defendants' Use of the Original Investment Funds Contributed by Mr. Bao and Ms. Zeng

As for Plaintiffs' contention that Defendants did not use the $600,000 investment from Mr. Bao for the Piermont project, the Court finds Mr. Bao's testimony overly speculative, or, when not speculative, not credible. There was testimony from both parties as to the

machinations involved in transferring substantial sums of money from China and why those transfers were made to individual, personal accounts rather than corporate or business accounts in the United States.  And with respect to the amount of the SBA loan used to finance the acquisition, Mr. Wang testified credibly and specifically about how he applied the $600,000 investment to the Piermont project, and why those funds were necessary despite the size of the loan relative to the acquisition costs.  *See id.* at 310:18-314:14, 416:11-418:20, 467:5-468:20.

As to the allegation that Defendants used the $600,000 investment money to purchase their New Jersey home, Plaintiffs concede that they have no evidence to support their accusation, *id.* at 187:22-188:1, and Ms. Bao credibly denied making the statement on which Mr. Bao based his allegation, *id.* at 485:6-12.  Mr. Wang also testified credibly about the financing that was used for the purchase of the New Jersey property.  *Id.* at 274:11-275:3.  As with many aspects of this case, there was virtually no admissible documentary evidence from either side to support the testimony offered at trial on these points.  Because the Court credits both aspects of Mr. Wang's testimony about his financial dealings, the Court finds no basis to conclude that the money from the $600,000 investment was misappropriated.

### D.  Circumstances of the Mr. Bao's Additional Investment

The circumstances surrounding Mr. Bao's transfer of an additional $267,000 into Sunwoo Trade after his initial investment of $600,000 remain unclear, and Plaintiffs have offered insufficient detail to substantiate their brief assertion that the additional contributions were made because Mr. Wang asked Mr. Bao to increase the investment.  Mr. Bao admitted that there were no new contractual terms associated with the subsequent contributions, and he did not provide any meaningful explanation of why he contributed these additional funds at all.  It particularly defies logic that Mr. Bao would have increased his investment in the Piermont

project so substantially when, according to his testimony, the original terms of the contractual arrangement between the parties still had not been fulfilled.

The Court credits Mr. Wang's testimony that the additional funds transferred into Sunwoo Trade were not contributed at his request or direction, or pursuant to any additional agreement between the parties.

## CONCLUSIONS OF LAW

### I.   Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this action because Plaintiffs are citizens of a foreign state and all Defendants are citizens of states of the United States.  *See* 28 U.S.C. § 1332(a)(2).

At the final pretrial conference and at trial, the Court raised the issue of subject matter jurisdiction to assess whether Plaintiffs—who live in New York State, and are therefore domiciled in the same state as Defendants Sunwoo Trade and 506 Piermont—are legal permanent residents of the United States.  If Plaintiffs had legal permanent resident status, this Court would not have had jurisdiction over this matter.  *See id.* ("district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State"); *Saraca Media Grp., Inc. v. Liehong Zhuang*, No. 20-cv-2780 (CM), 2020 WL 4016742, at *2 (S.D.N.Y. July 16, 2020).  But there is no evidence that Plaintiffs have received legal permanent resident status, and their status as asylum seekers does not make them "citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States" within the meaning of 28 U.S.C. § 1332(a)(2).  *See Aideyan v. Greaves*, 908 F. Supp. 196, 197 (S.D.N.Y. 1995) (even individual who has been

*granted* political asylum was "not a person admitted to the United States for permanent residence" within the meaning of the then-in-effect version of Section 1332(a)); *see also Osei v. Standard Chartered Bank*, No. 15-cv-3992 (LGS), 2015 WL 4006211, at *3 (S.D.N.Y. June 30, 2015) (finding that suit between a citizen of Ghana residing in United States as political asylee and foreign corporation was "suit between alien parties."). Accordingly, Plaintiffs' legal status is not a bar to the Court's exercise of jurisdiction.

The Court also would not have subject matter jurisdiction if any of the Defendants were foreign citizens rather than United States citizens. *See CP Solutions PTE, Ltd.*, 553 F.3d at 158 ("Diversity jurisdiction does not exist . . .'where on one side there are citizens [of a State] and aliens and on the opposite side there are only aliens.'" (quoting *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002))). The Court has found, however, that all Defendants are United States citizens, and therefore Defendants' citizenship status does not preclude the Court's exercise of jurisdiction.[11]

## II.     Breach of Contract

"'The elements of a breach-of-contract claim under New York law are (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Frye v. Lagerstrom*, No. 20-3134, 2021 WL 4022695, at

---

[11] Notably, as part of the Joint Pretrial Order, the Court required a "brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction." ECF No. 61 at 2. Plaintiff indicated that subject matter jurisdiction was based on 28 U.S.C. § 1332 because "this controversy is between citizens of a State and citizens or subjects of a foreign state," and because the amount in controversy exceeds $75,000. *Id.* Defendants did not object to this recitation or provide any contrary information to the Court, and Defendants' counsel electronically signed the Joint Pretrial Order. *See id.* at 2, 12.

*4 (2d Cir. Sept. 3, 2021) (summary order) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).[12]

The parties do not dispute that they entered into a binding oral contract in 2016 in connection with their joint investment in the Piermont project.  *See* Tr. at 115:16-19 ("Q.  Now, in the business transaction that you had here with Mr. Wang, your brother-in-law, did you have a written agreement as to what the terms and conditions of the agreement was to be?  A.  There was none."), 157:25-158:2 ("Q.  Did you ever put the terms of what your agreement would be with Jason into a writing?  A.  No."); *see also* Compl. ¶ 71 ("[T]he Defendants have breached the above-referenced duly established oral contract with the Plaintiffs."); Defs.' Post-Trial Mem. at 15 (noting that "there was never a demand for any written contracts regarding the business transactions that are the subject of this litigation").[13]  Plaintiffs maintain that Defendants

---

[12] The parties referred exclusively to New York law in both their pre-trial and post-trial briefs.  *See* ECF Nos. 62-63, 90-91.  "[S]uch implied consent is sufficient to establish choice of law."  *Murphy v. Morlitz*, 751 F. App'x 28, 29 (2d Cir. 2018) (summary order) (quotation marks omitted).

[13] The Second Circuit has established a four-factor test to help determine whether parties intend to be bound by an oral contract:  "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."  *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  Even if there were any ambiguity in this case as to whether the parties intended to be bound by their oral agreement, each of the four *Winston* factors militates in favor of the conclusion that the parties intended to be bound.  First, there is no evidence of an express reservation of the right not to be bound in the absence of a written contract.  Second, both sides have performed the contract—Plaintiffs by remitting the funds for the $600,000 investment, and Defendants by acknowledging Mr. Bao as the 50-percent owner of Sunwoo Trade and 506 Piermont.  Third, neither side claims that there are any contract terms that remain to be negotiated.  Fourth, given the relatively uncomplicated nature of the parties' agreement, and the fact that the agreement was made between family members—particularly family members who had engaged in business transactions before without written contracts—the parties reasonably could have expected to bind themselves orally.  *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 326 (2d

breached this agreement by (i) not providing Mr. Bao with shareholder certificates, or any other formal documents, evidencing his 50-percent stake in Sunwoo Trade and 506 Piermont; and (ii) not using Mr. Bao's $600,000 investment in the Piermont project for its intended purpose.

A.    **Documentation of Mr. Bao's Ownership Interest**

As set forth Section V.B of the Findings of Fact above, the Court has determined that provision of shareholder certificates, or any other formal documents, evidencing Mr. Bao's 50-percent stake in Sunwoo Trade and 506 Piermont was not a material term of the parties' 2016 oral contract. Accordingly, because this was not a requirement of the agreement, the fact that Defendants never provided Mr. Bao with documentation of his ownership interest cannot constitute a breach of contract.

Mr. Wang, a United States citizen, explained at trial that he would not have agreed to provide written confirmation of Mr. Bao's ownership interest, because such documentation, in light of Mr. Bao's status as a Chinese citizen, would have made it impossible to obtain an SBA loan to finance the acquisition or liquor licenses for the restaurants. Tr. at 328:21-23, 329:20-330:4, 367:4-368:10. Mr. Bao also testified that Mr. Wang explained these reasons to him during the course of their venture. *Id.* at 49:13-19. Mr. Wang's testimony and rationales are consistent with the legal standards applicable to obtaining a liquor license in New York State and obtaining a loan from the SBA.

New York's Alcoholic Beverage Control Law provides that among those who are "forbidden to traffic in alcoholic beverages" is

> [a] copartnership or a corporation, unless each member of the partnership, or each of the principal officers and directors of the corporation, is a

---

Cir. 1997) ("the complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally").

> citizen of the United States or a noncitizen lawfully admitted for
> permanent residence in the United States . . . .

N.Y. Alco. Bev. Cont. § 126(4); *see also id.* § 126(3) ("The following are forbidden to traffic in

alcoholic beverages:  [a] person who is not a citizen of the United States or a noncitizen lawfully

admitted for permanent residence in the United States.").

Further, the version of the SBA's Standard Operating Procedure ("SOP") 50 10 5(H),

*Lender and Development Company Loan Programs*, that was in effect at the time of the

acquisitions for the Piermont project states the following in Subpart B, Chapter 2:  "Eligibility

for 7(a) Guaranty Loan Program, Businesses Owned by Non-US Citizens":

> SBA can provide financial assistance to businesses that are at least 51%
> owned and controlled by persons who are not citizens of the US provided
> the persons are lawfully in the US.  The processing procedures and the
> terms and conditions will vary, depending upon the status of the owners as
> assigned by the United States Citizenship and Immigration Services
> (USCIS). . . .
>
> 7. Additional requirements for eligibility of businesses owned by non-
> citizens other than [legal permanent residents], including foreign-owned
> businesses:
>
> a) The application must contain assurance that management is expected to
> continue in place indefinitely and have U.S. citizenship or verified [legal
> permanent resident] status.
>
> i. Management must have operated the business for at least 1 year prior to
> the application date.  (This requirement prevents financial assistance to
> 'start-up' businesses owned by aliens who do not have [legal permanent
> residents] status.).

SOP 50 10 5(H) (Effective 5/1/2015), *Lender and Development Company Loan Programs*, at

101-04, https://www.sba.gov/document/sop-50-10-5-lender-development-company-loan-

programs (last visited 3/20/2023).  Thus, an experienced restaurant operator such as Mr. Wang

would have understood that preparing legal documentation evidencing the 50-percent ownership

interest in the Piermont project by a non-citizen without legal permanent resident status would

have been problematic, because such documentation would have precluded any application for

SBA financing and any application for a New York liquor license, both of which were necessary

for the purchase of the property and operation of the restaurants at 506 Piermont Avenue.[14]  *See*

ECF No. 90-2 at 3.  Mr. Wang therefore would not have entered into an agreement that would

have required him to provide such documentation to Plaintiffs.  These legal conclusions further

support the determination that the provision of shareholder certificates was not a material term of

the parties' contract.

It is also worth noting that "the mere fact that the corporation did not issue any stock

certificates to an individual does not preclude a finding that the individual has the rights of a

shareholder."  *Kun v. Fulop*, 71 A.D.3d 832, 833 (2d Dep't 2010) (cleaned up), *leave denied*, 15

N.Y.3d 701 (2010).  "In the absence of a share certificate a court must determine from other

available evidence whether a putative shareholder in fact and law enjoys that status."  *Id.*

---

[14] Whether Mr. Wang committed any civil or criminal violation by deliberately concealing the true nature of the ownership of Sunwoo Trade and 506 Piermont in order to facilitate the receipt of an SBA loan and New York State liquor license is beyond the scope of this proceeding.  What is clear, however, is that Mr. Wang knew, from the time he entered into the 2016 transaction with Mr. Bao, that the 50-percent owner of Sunwoo Trade and 506 Piermont was a Chinese national who did not have legal permanent resident status in the United States.  Mr. Wang also knew that his applications to different governmental authorities for loans and licenses would appear as though the entities seeking these loans and licenses did *not* have any foreign ownership that would interfere with the receipt of such loans and licenses, even when the entities were, in fact, 50-percent owned by Mr. Bao, as Mr. Wang admitted repeatedly under oath at trial.  Indeed, Mr. Wang testified that "if we legal have document, that means I lie to the SBA.  Then I have the problem for liquor license."  Tr. at 367:17-19.  In other words, Mr. Wang knew that if there were documentation of the actual ownership structure of Sunwoo Trade and 506 Piermont, his representations to the SBA in connection with the financing of the Piermont project would be a "lie," and he would have been at risk of losing his liquor license, and "[i]t's impossible to re-apply [for a] liquor license."  *Id.* at 368:6-7.  So while this Court credits Defendants' arguments in the context of defeating Plaintiffs' breach of contract claim, the Court in no way condones or endorses what appears to be deceptive conduct undertaken by Mr. Wang for the benefit of Sunwoo Trade and 506 Piermont.  Whether this conduct merits further investigation by the relevant authorities are decisions for those agencies and/or regulatory bodies.

(cleaned up). Here, the evidence establishes that Mr. Bao is a 50-percent shareholder of Sunwoo Trade and 506 Piermont. Defendants acknowledge that Mr. Bao's payment of $600,000 constituted the requisite consideration for his stake in these entities under the parties' oral contract. *See* Tr. at 354:6-355:8, 468:11-13; Defs.' Post-Trial Mem. at 6-7 (Mr. Wang "stipulates" that he and "the plaintiff" each own 50 percent of Sunwoo Trade and 50 percent of 506 Piermont). Mr. Bao likewise believed he was a shareholder in Sunwoo Trade and 506 Piermont upon remitting the $600,000 to Defendants. *See* Tr. at 164:8-12. For avoidance of doubt in the future of the parties' business relationship, the Court finds that Mr. Bao is, and has always been, a 50-percent owner of Sunwoo Trade and 506 Piermont.[15]

**B.    Alleged Misuse of the Investment Funds**

As set forth Section V.C of the Findings of Fact above, the Court has determined as a factual matter that there is no proof that Defendants misused the $600,000 provided by Mr. Bao for the Piermont project. Accordingly, while the use of the funds for the Piermont acquisition was a material term of the parties' 2016 oral agreement, Plaintiffs have failed to prove any breach of this contractual term by Defendants.

\* \* \* \* \* \* \* \* \* \*

For all of these reasons, the Court concludes that Plaintiffs have failed to prove, by a preponderance of the evidence, that Defendants are liable for breach of contract.

---

[15] The Court identifies Mr. Bao—rather than both Plaintiffs—as the 50-percent owner of Sunwoo Trade and 506 Piermont because all of the evidence submitted at trial supports the conclusion that it was Mr. Bao alone who entered into the 2016 contractual agreement with Mr. Wang that gives rise to the ownership interest. To the extent that Ms. Zeng and Mr. Bao have any separate agreement regarding this investment, or the treatment of assets within their marriage, those issues were not before the Court, and this Opinion and Order is not intended to intrude on any such agreements.

### III.     Unjust Enrichment

"Under New York law, there are three elements to an unjust enrichment claim: '(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.'"  *ASG & C, Inc. v. Arch Specialty Ins. Co.*, No. 21-1761-cv, 2022 WL 839805, at *1 (2d Cir. Mar. 22, 2022) (summary order) (quoting *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012)) (cleaned up).  In addition, "it is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract."  *Coty, Inc. v. L'Oreal S.A.*, 320 F. App'x 5, 7 (2d Cir. 2009) (summary order) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388-89 (1987) ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.")).

Here, it is undisputed that the parties had a valid and enforceable oral contract governing Mr. Bao's $600,000 investment in Sunwoo Trade and 506 Piermont.  Accordingly, to the extent Plaintiffs' unjust enrichment claim is based on the provision of the $600,000 in exchange for the 50-percent ownership interest in these entities, that claim is duplicative of Plaintiffs' breach of contract claim, and the unjust enrichment claim is not viable for that reason alone.

Plaintiffs also cannot base their claim for unjust enrichment on the additional $267,000 they maintain Mr. Bao subsequently conveyed to Defendants through transfers from Mr. Bao's bank account to Sunwoo Trade's bank account.  *See* Pls.' Ex. K.  In short, the additional funds contributed by a co-owner of a business into that business entity—apparently of his own volition, and not with any articulated business purpose—cannot be considered enrichment of Defendants

at Plaintiffs' expense, because Mr. Bao, as a 50-percent owner of Sunwoo Trade, continues to benefit from his infusion of assets into the company.  Similarly, Mr. Wang's contribution of additional cash assets into the business at later stages of the venture, *see* Tr. at 468:11-21, could not be classified as unjust enrichment of the Plaintiffs at Mr. Wang's expense for the same reason:  the additional unprompted investments by the co-owners, presumably designed to bolster the fortunes of the enterprise at times of difficulty, did and do inure the benefit of both co-owners.

Accordingly, the Court concludes that Plaintiffs have failed to prove, by a preponderance of the evidence, that Defendants are liable for unjust enrichment.

## IV.    Fraud

"Under New York law, the five elements of fraud are (1) a material misrepresentation or omission of fact (2) made by a defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (cleaned up).  Moreover, in a case where a breach of contract claim is asserted, to maintain a claim of fraud, "a plaintiff must either:  (i) demonstrate a legal duty separate from the duty to perform under the contract"; "(ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract"; or "(iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).  "A fraud claim may be considered collateral to a contract if the contract, including its representations and warranties, does not address the factual bases of the fraud claim." *FPP, LLC v. Xaxis US, LLC*, 764 F. App'x 92, 94 (2d Cir. 2019) (summary order).

In their Complaint, Plaintiffs allege, as the crux of their fraud claim, that "[t]he subject funds of the Plaintiffs[] were provided based upon the Defendants' fraudulently induced representation that the Plaintiffs would be given the 50% shares of the companies."  Compl. ¶ 81. Therefore, in its post-trial order, the Court specifically asked the parties to address the issue of whether the fraud claim was duplicative of the breach of contract claim.  ECF No. 87 at 2. Plaintiffs have largely conceded that their fraud claim is not distinct from their breach of contract claim.  Specifically, Plaintiffs assert that "**Defendants made an intentional misrepresentation**; he [*sic*] knows he [*sic*] will not use the money of the plaintiffs to buy the restaurant and give the **50%** shares to the plaintiffs . . .."  Pls.' Post-Trial Mem. at 26 (bold in original).  These allegations precisely mirror the two allegations of breach of contract addressed in Section II of the Conclusions of Law above, and cannot serve as the basis for a separate claim for fraud.

In their post-trial submissions, Plaintiffs contend that the additional contributions of $267,000 to Sunwoo Trade are not part of the breach of contract claim, because they were not made pursuant to the terms of the parties' 2016 agreement.  *See id.* at 15, 24, 25.  Setting aside the fact that this allegation is not properly pled in the Complaint, this separate charge of fraud also must be dismissed because Plaintiffs have not proven by a preponderance of the evidence that Defendants made any material misrepresentation or omission of fact in connection with the later contributions.  As set forth Section V.D of the Findings of Fact above, the Court has determined as a factual matter that the additional funds transferred into Sunwoo Trade were not contributed at Mr. Wang's request or direction.  Plaintiffs have not demonstrated that Defendants made any statement whatsoever—let alone any misrepresentation—to induce Mr. Bao to make the additional capital contributions, and in the absence of evidence a material misrepresentation, Plaintiffs' fraud claim must necessarily fail.

Therefore, the Court concludes that Plaintiffs have failed to prove, by a preponderance of the evidence, that Defendants are liable for fraud.

## V.     Defendants' Counterclaims

Defendants asserted five counterclaims in their Answer including, among others, fraudulent inducement and breach of fiduciary duty.  ECF No. 19.  Defendants did not present any evidence at trial with respect to their counterclaims, and in their post-trial submissions Defendants "stipulate that they did not present proofs on their counterclaim [*sic*]."  Defs.' Post-Trial Mem. at 6 n.1.  Based on this admitted failure of proof, the Court hereby dismisses Defendants' counterclaims in their entirety.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have failed to prove, by a preponderance of the evidence, that Defendants are liable on any of Plaintiffs' claims asserted in this action.  The Court further finds that Defendants have failed to prove, by a preponderance of the evidence, that Plaintiffs are liable on any of Defendants' counterclaims asserted in this action.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants on all of Plaintiffs' claims and in favor of Plaintiffs on all of Defendants' counterclaims, and to close this case.

Dated: March 22, 2023
       White Plains, New York

                         **SO ORDERED.**

                         _____
                         ANDREW E. KRAUSE
                         United States Magistrate Judge

24